985 A.2d 909

Laila SNEAD, Appellee

v.

SOCIETY FOR the PREVENTION OF CRUELTY TO ANIMALS OF PENNSYLVANIA, Appellant

Laila Snead, Appellee

v.

Society for the Prevention of Cruelty to Animals of Pennsylvania, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2009.

Decided Dec. 29, 2009.

168

Jonathan W. Hugg, Walter M. Phillips, Jr., Dawn Michele Sigyarto, Obermayer Rebmann Maxwell & Hippel, L.L.P., Philadelphia, for Society for the Prevention of Cruelty to Animals of Pennsylvania.

Glen H. Ridenour, II, Margolis Edelstein, Philadelphia, for Laila Snead.

## OPINION

Justice EAKIN.

The Society for the Prevention of Cruelty to Animals of Pennsylvania (SPCA) seized abused dogs from appellee, which it subsequently euthanized. Appellee sued, claiming civil

rights violations, negligence, and conversion; a Philadelphia jury returned a verdict in her favor.

The SPCA appealed, arguing it was immune from suit pursuant to the Sovereign Immunity Act,[1] or in the alternative, the Political Subdivision Tort Claims Act.[2] The Superior Court rejected the SPCA's immunity claims. *Snead v. Society for the Prevention of Cruelty to Animals of Pennsylvania*, 929 A.2d 1169, 1177 (Pa.Super.2007).[3] As a sovereign immunity defense is available only to a Commonwealth agency, the court considered whether the SPCA was a Commonwealth agency. The court observed the SPCA elects its own officers and directors and is not funded by public money; the Commonwealth does not control the SPCA, and the General Assembly has not recognized the SPCA as an agent or instrumentality of the Commonwealth. The court noted the SPCA's exercise of a governmental function, such as enforcement of animal control laws, does not by itself make it a Commonwealth agency. *See id.*, at 1177–78.

█ The Superior Court next examined whether the SPCA was a local agency eligible for immunity under the Tort Claims Act. *Id.*, at 1178. The court observed the SPCA manages its own affairs and adopts its own bylaws; the Commonwealth does not control the SPCA's operations or have an interest in its assets, and is not the SPCA's sole income source. Thus, the Superior Court concluded the SPCA was not entitled to immunity under either theory. *Id.*, at 1179. We granted allocatur to determine:

Whether the [Superior C]ourt erred in disregarding the SPCA's inherently governmental functions, including enforcement of Pennsylvania's Dog Law, authority to arrest

1. The Sovereign Immunity Act bars suits against the Commonwealth unless immunity has been waived. 42 Pa.C.S. §§ 8501–28.

2. The Tort Claims Act prohibits, with certain narrow exceptions, tort claims against local agencies. 42 Pa.C.S. §§ 8541–42.

3. The Superior Court's opinion extensively detailed the facts and procedural history, and decided several issues unrelated to our decision here. *See Snead*, at 1174–76. President Judge Emeritus McEwen cogently dissented from an unrelated portion of the opinion, but joined the portions relevant to this decision. *Id.*, at 1187.

suspects and execute search warrants, and traditional animal protection and control roles, pursuant to 42 Pa.C.S. § 8541, in holding the SPCA was not entitled to sovereign or governmental immunity.

*Snead v. Society for the Prevention of Cruelty to Animals of Pennsylvania,* 600 Pa. 372, 966 A.2d 548, 549 (2009) (table). Because statutory interpretation is a question of law, our standard of review is *de novo,* and our scope of review is plenary. *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006).

Contending it is a Commonwealth agency, the SPCA notes the General Assembly created it " 'to provide effective means for the prevention of cruelty to animals throughout the state of Pennsylvania, and for the enforcement of all laws heretofore or hereafter enacted for the protection of dumb animals.' " SPCA's Brief, at 13 (quoting Act of 1868, P.L. 615). Further, the SPCA points out that P.L. 615 requires police to assist it in enforcing the law. The SPCA's officers are appointed and trained pursuant to the Humane Society Police Officer Law.[4] The Dog Law, 3 P.S. §§ 459–101 to 459–1205, gives it power to seize dogs. *See* 3 P.S. § 459–302 (describing SPCA's responsibility for keeping seized dogs).

The SPCA alternatively argues the Tort Claims Act provides it governmental immunity. The SPCA alleges it is intertwined with government, especially in financial matters; it receives 50% of fines collected for violations of the Cruelty to Animals statute, 18 Pa.C.S. § 5511. The SPCA argues it enforces the animal control laws, and its officers are statutorily authorized to carry firearms, obtain search warrants, search locations, seize evidence, and arrest offenders.

Appellee counters that P.L. 615, creating the SPCA, contains no language suggesting the SPCA is an agency or instrument of the Commonwealth. Appellee contends the SPCA is merely a non-profit corporation, and Pennsylvania

---

**4.** 22 Pa.C.S. §§ 3701–18. The Humane Society Police Officer Law took effect after the underlying events. Prior to the law's enactment, the SPCA's enforcement officers were appointed as private police pursuant to 22 Pa.C.S. § 501 (former version).

law permits non-profit corporations to be sued. Appellee claims the SPCA's only relationship with government is providing services as an independent contractor to the City of Philadelphia. As the government does not indemnify the SPCA, exposing the SPCA to lawsuits would not deplete public funds, the rationale behind immunity concepts. Appellee alleges the SPCA's performance of a governmental function is irrelevant, since this is not the basis on which the Tort Claim Act grants immunity.

In Pennsylvania, sovereign immunity is available to a Commonwealth party, which is "a Commonwealth agency and any employee thereof." 42 Pa.C.S. § 8501. The Sovereign Immunity Act was:

> enacted to insulate the Commonwealth and its agencies from liability except in certain specified circumstances so that state governmental assets are not subject to depletion through multiple lawsuits. Thus, in determining whether an entity is a Commonwealth agency for sovereign immunity purposes, the important factors to be considered are whether the entity was created by the state to perform a state function so that a judgment against it would, in essence, injure the state.

*James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority*, 579 Pa. 26, 855 A.2d 669, 677 (2004) (citation omitted).

As this is a matter of statutory interpretation, the General Assembly's intent is paramount. 1 Pa.C.S. § 1921(a). To determine if the General Assembly intended an entity to be a Commonwealth agency, we consult the plain language of legislation pertaining to the entity. *See Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931, 934 (1990) (enabling legislation for Port Authority of Allegheny County specifies it is Commonwealth agency). The fact the General Assembly established the SPCA in 1868 is not conclusive, as most corporations were created by special legislation prior. *See Snead*, at 1178 n. 9 (special legislation commonly used to incorporate corporations prior to 1874). Indeed, the

legislation creating the SPCA does not designate it as a Commonwealth agency; instead, the General Assembly authorized the SPCA to "sue and be sued." Act of 1868, P.L. 615.

Reliance on the Humane Society Police Officer Law does not help appellants either, as that act defines humane societies, such as the SPCA, as nonprofit corporations. 22 Pa.C.S. § 3702. Nonprofit corporations can "sue and be sued." 15 Pa.C.S. § 5502(a)(2). In sum, there are no indications the General Assembly intended the SPCA to be a Commonwealth agency.[5]

This conclusion is affirmed by the manner in which the SPCA operates. The SPCA selects its own directors, who oversee it and elect its officers. The SPCA's funding largely derives from non-governmental sources. The SPCA cannot point to any Commonwealth assets that would be at risk from any judgment against it; Commonwealth resources would not be imperiled if the SPCA is exposed to legal liability. Accordingly, we must conclude the SPCA is not entitled to the defense of sovereign immunity.

We now turn to the Tort Claims Act, which provides, with certain exceptions, "no local agency shall be liable for any damages on account of any injury to a person or property. . . ." 42 Pa.C.S. § 8541. The Tort Claims Act's purpose is to limit the government's liability for its tortious acts. *Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 579 Pa. 404, 856 A.2d 43, 46–47 (2004) (quoting *Sphere Drake Insurance Company v. Philadelphia Gas Works*, 566 Pa. 541, 782 A.2d 510, 515 (2001)). We apply a two-prong approach to determine whether a given entity is within the ambit of the Tort Claims Act. Under the first prong, we determine whether the entity meets the statutory definition of "local agency," and under the second prong, we consider the Tort Claims Act's purpose. *Id.* We begin our analysis with the statute's plain

5. While the existence of a "sue and be sued" clause in a party's organic documents may not necessarily defeat a sovereign immunity claim, it does suggest the General Assembly did not intend to establish the SPCA as a state agency.

language. *Id.*, at 46 (quoting *Sphere Drake*, at 513). We have previously determined:

> "Local agency" is defined as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. A "government unit" is defined as "any government agency," which includes "any political subdivision, municipal authority and other local authority, or any officer or agency of any such political subdivision or local authority." 42 Pa.C.S. § 102.... [T]he Judicial Code does not define "local authority," but ... the Statutory Construction Act describes it as "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." *Sphere Drake*, 782 A.2d at 513 (citing 1 Pa.C.S. § 1991).

*Id.* (citations in original). The SPCA does not claim it was created by any political subdivision; thus, it is not a local agency within the plain language of the Tort Claims Act.

The second question is whether the entity is so intertwined with government that extending immunity to the entity would serve the purposes of the Tort Claims Act.[6] To determine whether immunizing an entity would serve this purpose, we consider whether: (1) a political subdivision created the entity; (2) the entity assists a political subdivision in serving its citizens; (3) a political subdivision appoints the entity's board of directors; (4) a political subdivision exercises substantial control over the entity; (5) the entity's assets would vest in a political subdivision if the entity were to be dissolved; (6) the entity's employees participate in any benefit plans exclusively reserved for employees of political subdivisions; (7) the entity's sole source of income is a political subdivision; and (8) a political subdivision indemnifies the entity, its employees, officers, and directors from claims and liabilities arising from services the entity provides. *See id.*, at

---

**6.** While the SPCA argues it is entitled to immunity because of the law enforcement function it performs, whether an entity is engaged in a governmental function is not controlling. *See Guinn v. Alburtis Fire Company*, 531 Pa. 500, 614 A.2d 218, 220 n. 4 (1992) (governmental immunity not dependent on whether agency performs governmental function).

49 (citing *Sphere Drake*, at 516) (describing application of factors in *Sphere Drake* ).

The weight of these factors indicates granting the SPCA governmental immunity would not serve the Tort Claims Act's purposes. The SPCA does serve the municipalities of Pennsylvania by enforcing animal control laws, but it was not created by any political subdivision. The SPCA does not claim its employees participate in any benefit plan usually reserved for a political subdivision's employees, and no government has an interest in the SPCA's assets. No government indemnifies the SPCA, which "adopts its own by-laws and manages its own affairs." Trial Court Opinion, 2/1/06, at 7. Therefore, extending governmental immunity to the SPCA would not further the Tort Claims Act's purposes.

Accordingly, we hold the SPCA is not entitled to sovereign immunity under the Sovereign Immunity Act or governmental immunity under the Tort Claims Act.

The order of the Superior Court is hereby affirmed.

Jurisdiction relinquished.

Chief Justice CASTILLE, Justice BAER, Justice TODD, Justice McCAFFERY and Justice GREENSPAN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR.

I agree with the result reached by the majority, but I have reservations about the reasoning, particularly to the degree the opinion suggests that status as a Commonwealth agency and the ability to sue and be sued are mutually exclusive. *See* Majority Opinion, *op.* at 172, 985 A.2d at 913–14. The materiality of a general sue-or-be-sued clause to the resolution of immunity claims appears to be a complex issue in both federal and state courts. *Compare, e.g., Connecticut v. Am. Elec. Power Co., Inc.,* 582 F.3d 309, 390 (2d Cir.2009) (indicating that "[s]ue-and-be-sued clauses 'have long been recognized as broad waivers of sovereign immunity' " (citation omitted)),

*with Tooke v. City of Mexia,* 197 S.W.3d 325, 342 (Tex.2006) (rejecting the proposition that the use of the phrase "sue and be sued" in organic documents is always tantamount to a waiver of immunity and explaining that the term is often used to mean only that an entity has the capacity to sue and be sued in its own name). In my view, such complexity, as well as the wider implications of treating authority to sue and be sued as dispositive,[1] merit independent consideration in closer cases.

---

1. For example, the Pennsylvania Turnpike Commission has the statutory authority to sue and be sued, *see* 36 P.S. § 652d; nevertheless, it has maintained that it is entitled to immunity. *See, e.g., Farabaugh v. Pa. Tpk. Comm'n,* 590 Pa. 46, 55–56, 911 A.2d 1264, 1269–70 (2006) (discussing the Commission's position); *accord Bradley v. Pa. Tpk. Comm'n,* 121 Pa.Cmwlth. 51, 55, 550 A.2d 261, 263 (1988) (holding that the Commission is a Commonwealth agency entitled to sovereign immunity).